IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GREENTOUCH USA, INC. and JONATHAN NUSSBAUM, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:24-CV-964 |
| STARWOOD FURNITURE (MFG) VIETNAM CORPORATION, HOME INSIGHTS, LLC, and JONATHAN CLINE, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

The plaintiffs filed this lawsuit relying on diversity of citizenship for subject matter jurisdiction. The defendants, Jonathan Cline, Starwood Furniture (MFG) Vietnam Corp., and Home Insights, LLC, move to dismiss, disputing the plaintiffs' allegations about the citizenship of plaintiff Greentouch USA, Inc. and contending that Greentouch is a citizen of North Carolina, as are some of the defendants. While North Carolina was Greentouch's principal place of business for years, the plaintiff has met its burden to prove that at the time this action was filed, its principal place of business had shifted to Florida. Diversity of citizenship exists, and the motion to dismiss will be denied.

I.   **Legal Standard**

Federal courts have limited subject matter jurisdiction. If subject matter jurisdiction does not exist, dismissal without prejudice is appropriate. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).

Under 28 U.S.C. § 1332(a)(1), federal courts have subject matter jurisdiction when the parties are "citizens of different States" and the "matter in controversy" exceeds $75,000 in value. *Navy Fed. Credit Union v. LTD Fin. Servs., LP*, 972 F.3d 344, 352 (4th Cir. 2020). For diversity jurisdiction to exist, there must be complete diversity between the parties; "no plaintiff may share a citizenship with any defendant." *Id.*; *see also Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998); *Capps v. Newmark S. Region, LLC.*, 53 F.4th 299, 302 (4th Cir. 2022). "Diversity jurisdiction is founded on assurance to nonresident litigants of courts free from susceptibility to potential local bias." *Guar. Tr. Co. v. York*, 326 U.S. 99, 111 (1945).

### A. Challenging Diversity Jurisdiction

"[A] defendant may challenge subject matter jurisdiction in one of two ways. First, the defendant may contend that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (cleaned up). "In the alternative, the defendant can contend . . . that the jurisdictional allegations of the complaint are not true." *Id.* (cleaned up). Once challenged, "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

In diversity cases, the determination of the citizenship of the parties is a "preliminary question of fact to be determined by the trial court." *Brooks v. Shope*, 430 F. App'x 220, 221 (4th Cir. 2011) (quoting *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)); *see also Webb v. Nolan,* 361 F. Supp. 418, 420 (M.D.N.C. 1972), *aff'd,* 484 F.2d

1049 (4th Cir. 1973). The party asserting federal jurisdiction must prove the necessary jurisdictional facts by a preponderance of the evidence. *Vuyyuru*, 555 F.3d at 347.

## B. Principal Place of Business

For purposes of diversity jurisdiction, a corporation is (1) "a citizen of every State and foreign state by which it has been incorporated" and (2) a citizen "of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). "[P]rincipal place of business is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities," often called "the corporation's nerve center." *Hertz*, 559 U.S. at 92–93 (cleaned up); *accord Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 170–71 (4th Cir. 2014). The nerve center must be "the actual center of direction, control, and coordination, and not simply an office where the corporation holds its board meetings." *Hoschar*, 739 F.3d at 171 (cleaned up) (quoting *Hertz*, 559 U.S. at 93).

## II. Findings of Fact[1]

The defendants are citizens of North Carolina and Vietnam. *See* Docs. 17-1, 17-3; Doc. 17-5 at 1; Doc 17-6 at 1; Doc. 17-7 at 1. The plaintiff, Jonathan Nussbaum, is a citizen of Florida. *See* Doc. 14-1.

Greentouch USA, Inc. was incorporated in Florida in 2014. *Id.* at 1–2. Greentouch manufactured fireplaces, heaters, bathroom vanities, and other products for

---

[1] The Court has cited the record for some of the facts found. Other facts are found based on the Court's evaluation of testimony at the hearing on April 30, 2025. There is no transcript of this hearing on the docket. The Court has included findings of fact that are not necessarily important to the decision in order to cover matters the parties arguably deemed relevant.

sale to mass retailers, including Lowe's. Greentouch contracted with manufacturers overseas to make the products. A significant amount of design work occurred in Florida, but almost all work related to sales, contracts, information technology, accounting, personnel matters, and customer service occurred in Mooresville, North Carolina. Doc. 12-1 at p. 3 ¶ 14.

Most of its senior level employees worked in Greentouch's facility in Mooresville, including the Senior Vice President of Sales, the Vice President of Business Development, the Vice President of Supply Chain and Operations, the Senior Director of Operations and Project Management, the Director of Sales, and the Director of Design. *Id.* at p. 3 ¶ 13. The North Carolina facility included spaces for warehousing, meetings, and offices for employees. Greentouch held meetings with customers in Mooresville, including its largest customer, Lowe's, which was located in the same city. Greentouch's materials on file with the High Point furniture market reflected that it operated in North Carolina, *see id.* at 7, as did some articles about the CEO. Doc. 12-2 at 3.

The CEO, Jonathan Nussbaum, lived and worked in Miami, Florida. Other than a brief period early in Greentouch's operations, he did not maintain separate office space for himself or Greentouch in Florida. In addition to his work for Greentouch, he had other business interests that he also oversaw. Greentouch had one bank account with a Florida bank. *See* Doc. 14-2. At least some filings with the Florida Secretary of State reflected that Florida was the company's principal place of business. Doc. 14-1.

Executives in North Carolina made most of the corporate decisions. Doc. 12-1 at p. 3 ¶ 14. Mr. Nussbaum largely communicated by telephone with those executives and

4

Case 1:24-cv-00964-CCE-JEP    Document 18    Filed 05/08/25    Page 4 of 10

officers, though he did visit the North Carolina facility a few times per year. *Id.* at p. 3 ¶ 12.

In 2022, Greentouch began experiencing financial difficulties. Early in 2022, Mr. Nussbaum hired an outside contractor in Florida to serve as Chief Operating Officer of Greentouch. Mr. Nussbaum became more involved in day-to-day decisions.

That same year, after developing an overdue balance on its account with Starwood, Greentouch entered into a contract with Starwood that called for the application of North Carolina law and for any mediations or court proceedings to happen in North Carolina. Doc. 17-5 at ¶¶ 9, 13. Mr. Nussbaum, identified in the contract documents as Greentouch's president, also signed a personal guaranty agreement with the same provisions about North Carolina law and venue. Doc. 17-6.

In 2023, problems developed with Lowe's, Greentouch's biggest customer, *see, e.g.*, Doc. 12-1 at p. 14 ¶ 23, and Greentouch began downsizing, largely based on recommendations from the Florida-based COO. In 2023, Greentouch moved into a smaller workspace in Mooresville. Doc. 11-1 at ¶ 5. By June 2023, Mr. Nussbaum and Greentouch owed defendant Starwood over $5.4 million. Doc. 17-7 at ¶ 2. As of January of 2024, Greentouch had reduced its workforce from approximately 37 employees to approximately five employees. Greentouch still maintained a small place of business in Mooresville, Doc. 12-1 at p. 10 ¶ 7, but its operations and decision-making were much less centralized.

On February 20, 2024, Greentouch filed a lawsuit in North Carolina state court against Lowe's. *Id.* at 9–38. In July 2024, Greentouch closed its Mooresville facility.

5

Doc. 11-1 at ¶ 5.  By October 1, 2024, Greentouch had no employees.[2]  While the scope of Greentouch's operations from 2022 through the summer of 2024 is not clear from the current evidence, it is clear that by October 1, 2024, it had ceased its sales and manufacturing operations and that its only activities were management of litigation and receiving the occasional payment from a customer.

On November 19, 2024, Greentouch filed this lawsuit.  Doc. 1.  At the time of filing, Greentouch's address on file with the Florida Secretary of State was a post office box in Mooresville, North Carolina.  Doc. 14-1 at 7.  Its bank statements were sent to the CEO in Florida.  Doc. 14-2.  In December 2024, Greentouch received a large payment from a customer, deposited directly into its Florida bank account.  *Id.* at 5.  As of April 2, 2025, Greentouch's LinkedIn page identified its location as Mooresville, North Carolina.  Doc. 12-1 at p. 4 ¶ 20; *id.* at 70.  Greentouch currently maintains a storage facility in North Carolina.

On March 10, 2025, Jonathan Cline, one of the defendants here, filed suit against Greentouch and Mr. Nussbaum in North Carolina state court.  Doc. 12-1 at 40–49.  Greentouch and Mr. Nussbaum moved to dismiss, but they have not removed the case to federal court.  *See* 28 U.S.C. § 1446(b)(1) (requiring removal within 30 days of service).  On March 11, 2025, Greentouch updated its mailing address with the Florida Secretary of State to Mr. Nussbaum's home address.  Doc. 14-1 at 8.

---

[2] Greentouch's bank statements from November and December 2024 reflect that its payroll manager was still repeatedly charging and receiving funds from Greentouch.  Doc 14-2 at 1–4.  Mr. Nussbaum, who testified there were no employees at that time, testified that this was a mistake that had taken time to clear up.

Additional findings of fact are made in the following discussion.

### III. Discussion

The plaintiffs allege that both plaintiffs are citizens of Florida and that the defendants are citizens of either North Carolina or Vietnam. Doc. 1 at ¶¶ 5–9. The defendants challenge the factual allegation only as to the citizenship of plaintiff Greentouch and assert that it is a citizen of North Carolina. Doc. 9 at ¶ 2. If Greentouch is a citizen of North Carolina, diversity of citizenship does not exist, and dismissal without prejudice is appropriate. *See Vuyyuru*, 555 F.3d at 347. But if the plaintiffs are correct about Greentouch's citizenship, then diversity of citizenship exists, and the Court has subject matter jurisdiction.

Greentouch's nerve center and principal place of business were in Mooresville, North Carolina for much of its operations. Doc. 12-1 at p. 3 ¶ 14. Most of Greentouch's senior management were there, and they largely ran the business. *Id.* at p. 3 ¶ 13. Mr. Nussbaum communicated with executives there by telephone to keep in touch. His home in Florida was not the nerve center of the company.

But the location of Greentouch's nerve center began shifting in 2022. By the time this lawsuit was filed in the fall of 2024, it had no employees other than Mr. Nussbaum. He was making all of Greentouch's decisions in Miami, Florida. While Greentouch retained some North Carolina connections, such as a storage facility and a post office box, those were not places where decisions were made. As the Supreme Court noted in *Hertz*, the nerve center test "points courts in a single direction, toward the center of

7

Case 1:24-cv-00964-CCE-JEP   Document 18   Filed 05/08/25   Page 7 of 10

overall direction, control, and coordination." 559 U.S. at 96; *Hoschar*, 739 F.3d at 170. By November 2024, that was Miami, Florida.

The defendants point out that Greentouch was still using a North Carolina address with the Florida Secretary of State and in some other public materials. *See* Doc. 9 at 9; Doc. 10 at 4; Doc. 12-1 at 7, 70; Doc. 14-1. That is so but it is not conclusive. Those same corporate records reflected that Florida was its principal place of business, Doc. 14-1, and the use of a North Carolina location for a LinkedIn account or an advertisement, *see* Doc. 12-1 at 7, 70, does not mean North Carolina is the nerve center.

The defendants also rely on the Fourth Circuit's decision in *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288, 291 (4th Cir. 1999). In *Athena*, a Georgia corporation shuttered its principal place of business in Maryland three years before filing a lawsuit in federal court in Maryland against two Maryland residents. *Id.* at 289. The plaintiff corporation contended it was a citizen of Georgia for diversity jurisdiction purposes. *Id.* at 289–90. The Fourth Circuit reviewed all the facts and circumstances and concluded that "a corporation which has been inactive for a substantial period of time . . . is a citizen only where it is incorporated." *Id.* at 291 (cleaned up).

*Athena* was decided before the Supreme Court's decision in *Hertz*, but it has not explicitly been overruled or abrogated. Assuming *Athena* is still good law, its facts are quite different from the facts here and, in any event, it does not support dismissal. Unlike the plaintiff in *Athena*, Greentouch had not completely ceased its operations; it was still receiving money from customers, Doc. 14-2 at 5, was still using an active bank account, *id.*, and was still managing such assets as it had in the form of lawsuits against others.

8

Case 1:24-cv-00964-CCE-JEP    Document 18    Filed 05/08/25    Page 8 of 10

Doc. 1; Doc. 12-1 at 9–38. As the *Athena* court noted, if a corporation is winding down or has not been inactive for a substantial period of time, "the place of its last business activity would be relevant to, but not dispositive of, the determination of its principal place of business." 166 F.3d at 291. While no one fact alone is dispositive here, all the evidence tends to show that in mid-November 2024 when this lawsuit was filed, the center of overall direction, control, and coordination was in Miami with the CEO, not in North Carolina where the business had previously been run and managed. Greentouch was a citizen only of Florida, where it was incorporated and where it then had its principal place of business.

Finally, the defendants raise concerns that the plaintiffs will do an about-face on this issue if things go badly for them in this litigation; they raise the specter of a void judgment and a lot of litigation for nothing. While subject matter jurisdiction cannot be waived, it would be problematic for a litigant and its lawyers to respond to a jurisdictional challenge by affirmatively asking the Court to find facts necessary for subject matter jurisdiction, to offer evidence, sworn testimony, and briefing to support those facts, and to then turn around and say they were just kidding. *See, e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. § 1927. The defendants also point out that they could learn facts during discovery that are inconsistent with the plaintiffs' evidence here and that undermine the Court's factual findings. That bridge can be crossed another day, if it is ever reached.

It is **ORDERED** that:

1. The defendants' motion to dismiss for lack of jurisdiction, Doc. 9, is **DENIED**.

2. The defendants **SHALL** file answer no later than May 23, 2025.

3. The plaintiffs **SHALL** provide their initial Rule 26(a) disclosures no later than May 27, 2025. The defendants **SHALL** provide their initial Rule 26(a) disclosures no later than June 2, 2025. Disclosures **SHALL** be regularly updated and supplemented.

4. Basic requests for document production may be served beginning on June 9, 2025.

5. The case is referred to the Magistrate Judge for a pretrial conference and scheduling order.

This the 8th day of May, 2025.

_____
UNITED STATES DISTRICT JUDGE