IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GREENTOUCH USA, INC. and JONATHAN NUSSBAUM, | ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | |
| v. | ) ) | 1:24-CV-964 |
| STARWOOD FURNITURE (MFG) VIETNAM CORPORATION, HOME INSIGHTS, LLC, and JONATHAN CLINE, | ) ) ) ) ) ) | |
| Defendants/Counterclaim Plaintiffs. ----------------------- | ) ) | |
| STARWOOD FURNITURE (MFG) VIETNAM CORPORATION & HOME INSIGHTS, LLC, | ) ) ) ) | |
| Third Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| DONALD NUSSBAUM, | ) ) | |
| Third Party Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

The defendants and third-party plaintiffs, Starwood Furniture Corp. and Home Insights, LLC, have brought various claims against the third-party defendant, Donald Nussbaum, arising out of his alleged role in business dealings between the third-party plaintiffs and the plaintiff in the original complaint, Greentouch USA. Donald Nussbaum moves to dismiss those claims for lack of personal jurisdiction and failure to state a

claim. At this stage, the third-party plaintiffs have adequately established that Mr. Nussbaum is subject to personal jurisdiction in North Carolina. And they have pled particularized facts sufficient to state a claim. The motion to dismiss will be denied.

I. Background

At the motion to dismiss stage, district courts "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Khashoggi v. NSO Grp. Techs. Ltd.*, 138 F.4th 152, 158 (4th Cir. 2025). When deciding a motion to dismiss based on lack of personal jurisdiction, a court may also "consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019).

In their third-party complaints, Starwood and Home Insights allege that Donald Nussbaum is a part-owner of plaintiff Greentouch USA, a corporation formerly headquartered and operating in North Carolina, Doc. 55 at p. 24 ¶ 5; Doc. 56 at p. 24 ¶ 4, and that he played an active role in the business's operations. Doc. 55 at p. 25 ¶ 6; Doc. 56 at p. 24 ¶ 5. They allege that the CEO, president, and majority owner of Greentouch, Donald's son Jonathan, made statements that he and Donald controlled Greentouch, Doc. 55 at p. 31 ¶ 34; Doc. 56 at p. 30 ¶ 30, and that Donald made the decisions about whether to pay Starwood and Home Insights. Doc. 55 at p. 25 ¶ 6; Doc. 56 at p. 24 ¶ 5. They allege that Donald repeatedly referred to himself as "Greentouch Home" in interactions with Starwood and Home Insights, Doc. 55 at p. 25 ¶ 8; Doc. 56 at p. 25 ¶ 7, and that he

2

paid himself unreasonable and exorbitant amounts from Greentouch funds, unrelated to work performed and profits earned. Doc. 55 at p. 36 ¶ 58; Doc. 56 at p. 33 ¶ 43. They allege that Donald knew about Greentouch's merchandise quality and defect problems and its history of stiffing suppliers, Doc. 55 at pp. 29–30 ¶¶ 27–32; Doc. 56 at p. 29–30 ¶¶ 24–28, and that Donald failed to disclose that history and other material facts about Greentouch's financial condition to Starwood and Home Insights under circumstances that would require such disclosure. Doc. 55 at p. 33 ¶ 44, p. 39 ¶¶ 71, 74–75, p. 67 at ¶ 198; Doc. 56 at p. 32 ¶ 40, pp. 34–35 ¶¶ 49, 52–53, p. 54 ¶ 142. Representatives of Starwood emailed Donald and Jonathan several times about defaults and demands to cure. Doc. 55 at pp. 51–52 ¶¶ 122, 126; Doc. 56 at p. 39 ¶ 71, p. 40 ¶ 75. They also allege that Jonathan Nussbaum and Donald Nussbaum were the alter egos and agents of the various Greentouch entities, Doc. 55 at pp. 25–26 ¶¶ 8, 10; Doc. 56 at p. 25 ¶¶ 7, 9, and that they owed fiduciary duties to Starwood and Home Insights. Doc. 55 at p. 73 ¶¶ 212–14; Doc. 56 at pp. 58–59 ¶¶ 154–56.

Starwood and Home Insights also offer evidence in support of their allegations. Their witnesses testify that they heard Jonathan say that Donald made financial decisions for Greentouch and controlled the company with Jonathan, and that in their work for and with the various litigants, they understood that Donald was Greentouch USA's CFO. Doc. 81-1 at ¶ 2; Doc. 81-2 at ¶ 4. They also testify that Donald visited Greentouch USA's offices in North Carolina at least four times. Doc. 81-1 at ¶ 5. Finally, in earlier proceedings in this case Jonathan testified that Donald was a part owner of Greentouch. Doc. 20 at 45–46.

Donald disputes those allegations and testifies that he was never an owner, officer, or director of Greentouch USA, Doc. 68 at p. 39 ¶ 7, that the last time he travelled to North Carolina was before March 2020, *id.* at p. 40 ¶ 13, that his trips to North Carolina between 2019 and the present were for internal Greentouch meetings, holiday parties, or to reconnect with friends, *id.*, and that since 2009 he has resided continuously in California. *Id.* at p. 39 ¶ 4. Jonathan now testifies that his father was never an owner of Greentouch USA and that his prior sworn testimony to the contrary was mistaken. Doc. 82-1 at ¶¶ 3–6.

## II. Lack of Personal Jurisdiction

Donald first moves to dismiss the third-party complaint against him on personal jurisdiction grounds. He contends that the third-party defendants have not pled sufficient facts to show personal jurisdiction and, in the alternative, that they have not offered sufficient evidence to support personal jurisdiction.

If challenged, the plaintiff bears the burden of demonstrating personal jurisdiction at every stage of the litigation. *See dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 131 (4th Cir. 2023). "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226.

There is a three-prong test for specific jurisdiction: (1) the defendant has made deliberate contacts with the forum state, (2) the plaintiffs' claims arise out of or relate to those contacts, and (3) the exercise of personal jurisdiction would be constitutionally reasonable. *See Khashoggi*, 138 F.4th at 159; *Ford Motor Co. v. Mont. Eighth Jud. Dist.*

4

*Ct.*, 592 U.S. 351, 359–60 (2021).  The third-party plaintiffs have alleged facts sufficient to show all three of these things, and their evidence similarly supports this conclusion.

First, the third-party defendants allege that Donald had deliberate contacts with the forum state, and they have supported those allegations with evidence.  Donald was an owner and officer of a corporation that operated out of North Carolina.  He made the financial decisions for that business.  He came to North Carolina several times to deal with business matters related to Greentouch.  And he routinely received emails related to Greentouch's financial matters.

Second, the third-party plaintiffs' claims arise out of those contacts.  In essence, their claims are based on the allegation that Jonathan and Donald misrepresented Greentouch's financial situation and convinced them to keep doing business, even though Greentouch owed them a lot of money and had no real prospect of returning to solvency.[1]  They allege that Donald is liable for those claims because of specific things he said or failed to say to them about Greentouch's financial health when he was an owner and officer of Greentouch and a partner of Starwood and Home Insights between 2019 and 2024.  Doc. 55 at pp. 72–76 ¶¶ 210–23, pp. 81–82 ¶¶ 245–48; Doc. 56 at pp. 58–61 ¶¶ 152–65, pp. 64–65 ¶¶ 178–81.  These things are all alleged to have happened while Greentouch was operating its business in North Carolina.  *See* Doc. 18 at 4–5.  This is sufficient to show that their claims arise out of activities Donald directed at North

---

[1] The third-party plaintiffs have brought claims against Donald for breach of fiduciary duty, fraud, constructive fraud, and unfair and deceptive trade practices.  Doc. 55 at pp. 72–76 ¶¶ 210–23, pp. 81–82 ¶¶ 245–48; Doc. 56 at pp. 58–61 ¶¶ 152–65, pp. 64–65 ¶¶ 178–81.

5

Carolina. *dmarcian, Inc.*, 60 F.4th at 134. This was not an isolated interaction; it was ongoing joint activity. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295–96 (4th Cir. 2009); *see also dmarcian, Inc.*, 60 F.4th at 134 (holding personal jurisdiction existed because the entities had a contract to work together, made concrete plans to do so, and performed the contract in the forum state). And the commission of intentional torts, such as defrauding a North Carolina company and breaching a fiduciary duty owed to a North Carolina company, are quintessential contacts giving rise to claims. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) (holding that personal jurisdiction was properly exercised over "primary participants in an alleged wrongdoing intentionally directed at a [forum-state] resident.").

Lastly, the exercise of personal jurisdiction over Donald is fair and reasonable. Donald's alleged and admitted prior contacts with North Carolina, including several trips to the state and repeated participation in business activities with and on behalf of North Carolina businesses, suggest "that the burden is not constitutionally unreasonable." *Cree, Inc. v. Exel N. Am. Logistics, Inc.*, No. 02-CV-319, 2004 WL 241508, at *4 (M.D.N.C. Feb. 6, 2004).

Although the third-party plaintiffs have established a prima facie case for personal jurisdiction, denying Donald's motion "at this stage 'does not finally settle the issue' of the court's personal jurisdiction over him for the remainder of the matter." *NetTax, LLC v. Posso Pizza, Inc.*, No. 23-CV-31, 2024 WL 260501, at *4 (W.D. Va. Jan. 24, 2024) (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005)). The evidence that emerges in discovery and at trial may differ from that

6

alleged in the complaints and shown so far in the third-party plaintiffs' evidence. If challenged at the close of discovery, the burden remains on the third-party plaintiffs to "eventually prove the existence of personal jurisdiction by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." *New Wellington*, 416 F.3d at 294 n.5 (cleaned up).

The third-party defendant's motion to dismiss for lack of personal jurisdiction will be denied.[2]

### III. Failure to State a Claim

Donald next argues that the claims against him should be dismissed because the third-party plaintiffs have not satisfied the pleading requirements of Rules 8 and 9(b) and have otherwise failed to state claims on which relief may be granted.

Rule 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." And Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," so a plaintiff must "plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019) (cleaned up). If the complaint does not comply with these pleading requirements, then it fails to state a claim under Rule 12(b)(6). *Draughon v.*

---

[2] The third-party plaintiffs assert that Donald is subject to both general and specific jurisdiction in North Carolina. Doc. 81 at 5–10. Since there are sufficient allegations and affidavit testimony to establish a prima facie case for specific jurisdiction, it is unnecessary to address general jurisdiction.

7

*Smith*, No. 21-CV-101, 2021 WL 4927981, at *2 (E.D.N.C. Oct. 21, 2021) (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

Although the third-party complaints are not paragons of clarity or concision, they do state in painstaking detail the misrepresentations and omissions that the third-party plaintiffs allege constitute fraud. *See, e.g.*, Doc. 55 at p. 72 ¶ 211; Doc. 56 at p. 58 ¶ 153. The complaints also allege facts from which it can be reasonably inferred that Donald was an owner and officer of Greentouch USA and Greentouch Hong Kong, *e.g.* Doc. 55 at p. 25–26 ¶¶ 6, 8–10; Doc. 56 at pp. 24–25 ¶¶ 5, 7–9; that the Greentouch companies were Donald's alter egos, Doc. 55 at p. 25 ¶¶ 8–9; Doc. 56 at p. 25 ¶¶ 7–8; that Donald owed a fiduciary duty to Greentouch's creditors, Doc. 55 at p. 42 ¶ 89; Doc. 56 at p. 35 ¶ 54; *see Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 31, 560 S.E.2d 817, 825 (2002) (discussing when a corporate director owes a fiduciary duty to creditors); that Donald is subject to veil piercing under Florida or North Carolina law,[3] *e.g.* Doc. 55 at p. 25 ¶¶ 8–9, p. 72 at ¶ 211; Doc. 56 at p. 25 ¶¶ 7–8, p. 58 ¶ 153; *see Beltran v. Miraglia*, 125 So. 3d 855, 858 (Fla. 4th Dist. Ct. App. 2013) (stating requirements for piercing the corporate veil under Florida law); *Nicks v. Nicks*, 241 N.C. App. 487, 497, 774 S.E.2d 365, 373–74 (2015) (same but under North Carolina law); and that Donald and his son engaged in a civil conspiracy. Doc. 55 at p. 82 ¶¶ 249–252; Doc. 56 at pp. 65–66 ¶¶ 182–85; *see Piraino Bros., LLC v. Atl. Fin. Grp., Inc.*, 211 N.C. App. 343, 350, 712 S.E.2d 328, 333

---

[3] The parties appear to disagree over whether Florida or North Carolina law supplies the standard for piercing Greentouch's corporate veil. *Contrast* Doc. 68 at 32–33, *with* Doc. 81 at 20–21. Since the third-party plaintiffs have adequately pled the elements under either standard, any disagreement is irrelevant at this stage.

(2011) (stating elements of civil conspiracy). The motion to dismiss for failure to state a claim will be denied.

It is **ORDERED** that the third-party defendant Donald Nussbaum's motion to dismiss the claims against him, Doc. 67, is **DENIED**.

This the 16th day of December, 2025.

_____
UNITED STATES DISTRICT JUDGE